UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

AQUILES CONDE-SHENERY,  :  CIVIL NO: 3:18-CV-02338
                        :
          Plaintiff,    :
                        :
        v.              :  (Chief Magistrate Judge Schwab)
                        :
DETECTIVE DAVID RODICK, :
*et al.,*               :
                        :
          Defendants.   :
                        :

## MEMORANDUM OPINION

## I.  Introduction.

The remaining claim in this case is a malicious prosecution claim by the plaintiff Aquiles Conde-Shenery.  Both the defendants and Conde-Shenery have filed motions for summary judgment.  Because there was probable cause for the charges against Conde-Shenery, his malicious prosecution claim fails.  Thus, we will grant the defendants' motion for summary judgment and deny Conde-Shenery's motion for summary judgment.

## II.  Background and Procedural History.

Conde-Shenery began this action by filing a complaint on December 7, 2018.  After we granted his motion to amend/correct his complaint, he filed an amended complaint on March 15, 2019.  The amended complaint names as defendants Hazleton City/Borough ("Hazleton City") and detective David Rodick.  Conde-Shenery presents claims based on his arrest and prosecution for the robbery of a bakery.  Although Conde-Shenery spend some time in prison on the charges regarding the robbery, the charges were eventually dropped.

As a result of a motion to dismiss filed by the defendants, all of Conde-Shenery's claims were dismissed except a malicious prosecution claim against the defendants.  The defendants then filed an answer, and the parties engaged in discovery.

An amended case management order set a deadline of February 12, 2020, for dispositive motions.  On February 12, 2020, the defendants file a motion for summary judgment.  On March 5, 2020, Conde-Shenery filed his own motion for summary judgment.[1]  Although Conde-Shenery's motion for summary judgment

---

[1]  We note that after that summary judgment motions were filed, Conde-Shenery also moved to amend his complaint to add claims and defendants.  We denied his request to amend given that the case had already proceeded to the summary-judgment stage and his request to amend was not timely submitted, given that leave to amend at that stage would prejudice the defendants, and given that leave to amend would be futile as to several of the defendants that Conde-Shenery sought to add.

was not timely filed, given that he is proceeding *pro se* and that the defendants have not been prejudiced by his brief delay in filing the motion, we will address Conde-Shenery's motion on the merits rather than dismissing it as untimely.  Both the defendants' motion for summary judgment and Conde-Shenery's motion for summary judgment have been fully briefed.

Because we conclude that there was probable cause for the charges against Conde-Shenery, we will grant the defendants' motion for summary judgment and deny Conde-Shenery's motion for summary judgment.

## III.  Summary Judgment Standards.

The parties move for summary judgment under Rule 56(a) of the Federal Rules of Civil Procedure, which provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "Through summary adjudication the court may dispose of those claims that do not present a 'genuine dispute as to any material fact' and for which a jury trial would be an empty and unnecessary formality." *Goudy-Bachman v. U.S. Dept. of Health & Human Services*, 811 F. Supp. 2d 1086, 1091 (M.D. Pa. 2011) (quoting Fed. R. Civ. P. 56(a)).

The moving party bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  With respect to an issue on which the nonmoving party bears the burden of proof, the moving party may discharge that burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party has met its burden, the nonmoving party may not rest upon the mere allegations or denials of its pleading; rather, the nonmoving party must show a genuine dispute by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c).  If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. *Celotex*, 477 U.S. at 322.

Summary judgment is also appropriate if the nonmoving party provides merely colorable, conclusory, or speculative evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts. *Id.* at 252. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248. A dispute about a material fact is genuine only if there is enough evidence to allow a reasonable factfinder to return a verdict for the non-moving party. *Id.* at 248–49. When "faced with a summary judgment motion, the court must view the facts 'in the light most favorable to the nonmoving party.'" *N.A.A.C.P. v. N. Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 475 (3d Cir. 2011) (quoting *Scott v. Harris,* 550 U.S. 372, 380 (2007)).

At the summary judgment stage, the judge's function is not to weigh the evidence or to determine the truth of the matter; rather it is to determine whether there is a genuine issue for trial. *Anderson,* 477 U.S. at 249. The proper inquiry of

the court "is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

Summary judgment is warranted, after adequate time for discovery, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex,* 477 U.S. at 322.  "Under such circumstances, 'there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.'" *Anderson v. Consol. Rail Corp.*, 297 F.3d 242, 247 (3d Cir. 2002) (quoting *Celotex,* 477 U.S. at 323).  "[S]ummary judgment is essentially 'put up or shut up' time for the non-moving party: the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006).

Further, a party that moves for summary judgment on an issue for which he bears the ultimate burden of proof faces a difficult road. *United States v. Donovan*, 661 F.3d 174, 185 (3d Cir. 2011).  "[I]t is inappropriate to grant summary judgment in favor of a moving party who bears the burden of proof at trial unless a

6

reasonable juror would be compelled to find its way on the facts needed to rule in its favor on the law." *El v. Se. Pa. Transp. Auth.,* 479 F.3d 232, 238 (3d Cir. 2007) (footnote omitted).  A party who has the burden of proof must persuade the factfinder that his propositions of fact are true, and "if there is a chance that a reasonable factfinder would not accept a moving party's necessary propositions of fact, pre-trial judgment cannot be granted." *Id.*  "Specious objections will not, of course, defeat a motion for summary judgment, but real questions about credibility, gaps in the evidence, and doubts as to the sufficiency of the movant's proof, will." *Id.*

"Courts are permitted to resolve cross-motions for summary judgment concurrently." *UHS of Delaware, Inc. v. United Health Servs., Inc.*, 227 F. Supp. 3d 381, 390 (M.D. Pa. 2016).  But "[w]hen doing so, the court is bound to view the evidence in the light most favorable to the non-moving party with respect to each motion." *Id*.

## IV.  The Defendants' Motion for Summary Judgment.

### A.  Material Facts.

Local Rule 56.1 requires a party moving for summary judgment to file "a separate, short and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be

tried." M.D. Pa. L.R. 56.1.  The Rule, in turn, requires the non-moving party to file

"a separate, short and concise statement of the material facts, responding to the

numbered paragraphs set forth in the statement required [by the moving party], as

to which it is contended that there exists a genuine issue to be tried." *Id.*  The

"[s]tatements of material facts in support of, or in opposition to, a motion shall

include references to the parts of the record that support the statements," and "[a]ll

material facts set forth in the statement required to be served by the moving party

will be deemed admitted unless controverted by the statement required to be served

by the opposing party." *Id.*

Here, the defendants filed a statement of material facts in support of their

motion for summary judgment, and Conde-Shenery filed a response to that

statement of material facts. *See docs. 42*, *49*.  In his response, Conde-Shenery

purports to deny many of the facts set forth by the defendants. *See doc. 49*.  He

does not, however, point to evidence to support his denials. *Id.*  Rather, Conde-

Shenery responds to many of the facts set forth by the defendants merely by

asserting that the defendants have set forth their version of the facts and by

asserting that the defendants must prove the facts by convincing evidence at trial.

*Id*.  But as the plaintiff, Conde-Shenery has the burden at trial of proving the facts

that support his claim.  And here, at the summary judgment stage, he must show

that there is a genuine factual dispute warranting a trial.

8

Conde-Shenery also points to his pleadings and his brief in opposition to purportedly support his denials.  But a party opposing a motion for summary judgment, '"may not rest upon the mere allegations or denials of his pleadings'" or upon assertions made in his brief. *D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 268 (3d Cir. 2014) (quoting *Gans v. Mundy*, 762 F.2d 338, 341 (3d Cir. 1985)); *Berckeley Inv. Grp.*, 455 F.3d at 201 (stating that "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument").

Because the statement of facts set forth by the defendants is supported by evidence and Conde-Shenery does not point to evidence to create a genuine factual dispute, in accordance with Local Rule 56.1, we deem Conde-Shenery to have admitted the facts set forth by the defendants in their statement of material facts. Below, we set forth the material facts regarding Conde-Shenery's prosecution.

Conde-Shenery was investigated for the armed robbery of Castillo Bakery. *Doc. 42* at ¶ 1.  On June 3, 2014, at approximately 9:51 p.m., defendant Rodick responded to a Luzerne County Communications dispatch directing all Hazleton City Police Units to the area of 20 North Vine Street for a report of an armed robbery that had taken place moments earlier. *Id*. at ¶ 2.  Initial reports were that there were two males armed with handguns. *Id*. at ¶ 3.

Once on the scene, Rodick encountered Daniel Castillo, who informed him that he had been robbed by two Hispanic males. *Id*. at ¶ 4.  Castillo stated that minutes before the robbery, a male stuck his head around the corner of the doorway and asked if he was closed. *Id*. at ¶ 5.  Castillo then stated that minutes later, two men entered the bakery and robbed him at gunpoint. *Id*. at ¶ 6.  Castillo informed defendant Rodick that the same male that had the gun was the male who had earlier asked him if the bakery was closed yet. *Id*. at ¶ 7.

Both men struck and threatened to kill Castillo and demanded to know where his money was hidden. *Id*.  They forced Castillo into a back bedroom inside his bakery, where they struck him on the head, bound him with clear packaging tape, forced him onto the floor, and threw a mattress on him. *Id*. at ¶ 8.  Castillo recalled the man with the gun telling him that he had killed people before. *Id*.

On July 1, 2014, defendant Rodick interviewed Castillo, and Castillo informed Rodick that he knew who robbed him. *Id*. at ¶ 9.  Castillo indicated that he had seen one of the individuals who had robbed him. *Id*. at ¶ 10.  He told Rodick that he had spoken to one of the other detectives about his ability to identify one of the men. *Id*.  More specifically, Castillo told Rodick that he identified the person who had asked him if the bakery was closed as the same person who had minutes later entered the bakery and robbed him at gunpoint. *Id*.

10

On July 3, 2014, defendant Roddick went to Castillo's Bakery and spoke with Castillo again. *Id*. at ¶ 11.  Rodick had prepared an eight-person photographic line-up containing the image of Conde-Shenery and seven other persons of similar appearance *Id*.  Prior to showing the line-up to Castillo, Rodick prefaced the conversation with the following:

> The person who may have been one of the actors who robbed you on June 5, 2014[2] may or may not be included among these images.  I need you to take a careful look at these pictures and tell me if you recognize anyone in the pictures.  If you do, I need you to tell me where you know that person from.  Also understand that I need you to be certain of your identification. This is important because depriving someone of their freedom by arresting them carries a great responsibility.

*Id*. at ¶ 12.  After Castillo expressed his understanding, he was then shown the line-up. *Id*. at ¶¶ 12–13.  Immediately and without any hesitation, Castillo pointed to Conde-Shenery's image on the top left row. *Id*. at ¶ 13.  On July 3, 2014, Castillo indicated to the Hazleton Police that Conde-Shenery robbed him, and Castillo informed Rodick that he saw Conde-Shenery's face when before the robbery, Conde-Shenery was at the front door and asked if the bakery was closed. *Id*. at ¶¶ 14–15.  Castillo also indicated that Conde-Shenery had the same voice as one of the men who tied him up and threatened to kill him. *Id*. at ¶ 15.

---

[2]  We note that the robbery was on June 3, 2014, not June 5, 2014.  This minor discrepancy is immaterial for purposes of the pending motions for summary judgment.

11

On July 3, 2014, defendant Rodick contacted a magisterial district judge, and that judge ordered that an arrest warrant be issued for Conde-Shenery. *Id*. at ¶ 17.[3]  On August 26, 2014, Conde-Shenery was arrested for armed robbery and conspiracy to commit armed robbery in connection with the robbery of Castillo Bakery. *Id*. at ¶ 18.

On September 9, 2014, Conde-Shenery had a preliminary hearing during which he was represented by counsel. *Id*. at ¶ 19.  At that hearing, Castillo testified that Conde-Shenery was one of the two men who robbed him on June 3, 2014. *Id*. at ¶ 20.  Castillo also testified that the man with the handgun was Conde-Shenery. *Id*.  He further added that he saw Conde-Shenery days after the robbery at a gas station on West Broad Street in Hazleton. *Id*.  He explained that he heard Conde-Shenery speak, and he realized when he looked at Conde-Shenery that this was the male with the handgun who had robbed him. *Id*.  After the preliminary hearing, Magisterial District Judge Zola ruled that there was enough evidence presented to establish a prima facie case, and Conde-Shenery's criminal case was bound over for trial in the Luzerne County Court of Common Pleas. *Id*. at ¶ 21.

---

[3]  The defendants assert that this magisterial district judge was Judge Dixon, while Conde-Shenery argues that it was Judge Zola and that Judge Zola had a conflict of interest given that family members of his were involved in other aspects of the case.  Which judge issued the arrest warrant is immaterial, however, to the dispositive issue, addressed below, of whether there was probable cause to prosecute Conde-Shenery.

On December 3, 2014, Conde-Shenery's mother posted his bail in the amount of $750. *Id*. at ¶ 22.  On February 9, 2017, the defendants were made aware that another inmate had admitted to his ties to the crime. *Id*. at ¶ 24.  And on February 13, 2017, based on that exculpatory evidence, the charges against Conde-Shenery were withdrawn. *Id*. at ¶ 25.

In initiating proceedings against Conde-Shenery, defendant Rodick did not act out of spite, and he believed that based on the information provided to him during his investigation that the proceeding was proper. *Id*. at ¶28.  Conde-Shenery is currently incarcerated at SCI-Albion on an unrelated matter. *Id*. at ¶ 29.

### B.  The defendants are entitled to summary judgment.

Conde-Shenery brings his claims under 42 U.S.C. § 1983.  "Section 1983 imposes civil liability upon any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the Constitution or laws of the United States." *Shuman v. Penn Manor School Dist.,* 422 F.3d 141, 146 (3d Cir. 2005).  Section 1983 "does not create any new substantive rights but instead provides a remedy for the violation of a federal constitutional or statutory right." *Id.*  To establish a claim under § 1983, the plaintiff must establish a deprivation of a federally protected right and that a person acting under color of state law committed this deprivation. *Woloszyn v. County of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005).

Conde-Shenery claims that the defendants violated the Fourth Amendment by maliciously prosecuting him.  The Fourth Amendment states, in pertinent part, that "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause . . . ." U.S. CONST. Amend. IV.  To establish a malicious prosecution claim, the plaintiff must "show that: '(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in his favor; (3) the defendants initiated the proceeding without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) he suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.'" *Geness v. Cox*, 902 F.3d 344, 355 (3d Cir. 2018) (quoting *Zimmerman v. Corbett*, 873 F.3d 414, 418 (3d Cir. 2017)).

### 1.  Defendant Rodick.

Defendant Rodick contends that he is entitled to summary judgment because Conde-Shenery cannot establish the first, third, or fourth elements of a malicious prosecution claim.  But because we conclude that Conde-Shenery cannot establish the third element—that the defendant initiated the proceeding without probable cause—that is the only element that we address.

"The probable-cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003). "Probable cause exists if there is a 'fair probability' that the person committed the crime at issue." *Wilson v. Russo*, 212 F.3d 781, 789 (3d Cir. 2000) (quoting *Sherwood v. Mulvihill*, 113 F.3d 396, 401 (3d Cir. 1997)).  In other words, "[P]robable cause . . . exists when the facts and circumstances within the . . . officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person . . . ." *Orsatti v. New Jersey State Police*, 71 F.3d 480, 483 (3d Cir. 1995).

"Probable cause 'is not a high bar.'" *District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018) (quoting *Kaley v. United States*, 571 U.S. 320, 338 (2014)).  It is a "significantly lower" standard than the standard required for a conviction, and "[i]t is therefore irrelevant in a probable cause inquiry whether a person is later acquitted of the crime for which she or he was arrested." *Halsey v. Pfeiffer*, 750 F.3d 273, 299 (3d Cir. 2014) (internal quotations and citations omitted). Moreover, the "probable cause inquiry is entirely objective." *Id*. (footnote omitted).  Thus, "an arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause." *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004).

15

The probable cause "determination is necessarily fact-intensive, and it will usually be appropriate for a jury to determine whether probable cause existed." *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 468 (3d Cir. 2016). "Nevertheless, summary judgment may be granted on the question of probable cause if a court concludes that 'the evidence, viewed most favorably to [the nonmoving party], reasonably would not support a contrary factual finding.'" *Id.* (quoting *Sherwood*, 113 F.3d at 401).

"There is a tension inherent in evaluating probable cause at the summary judgment stage" because "[o]n the one hand, the summary judgment standard asks whether there is a genuine dispute as to any material fact, viewing the evidence in the light most favorable to the non-moving party," while "[o]n the other hand, the probable cause standard by definition allows for the existence of conflicting, even irreconcilable, evidence." *Dempsey*, 834 F.3d at 468 (internal quotations and citations omitted). To accommodate that tension, we consider all the "facts and assess whether any reasonable jury could conclude that those facts, considered in their totality in the light most favorable to the nonmoving party, did not demonstrate a 'fair probability' that a crime occurred." *Id.* "Only then would the existence of conflicting evidence rise to the level of a 'genuine dispute as to any material fact' such that summary judgment would be inappropriate." *Id.* "Thus, where the question is one of probable cause, the summary judgment standard must

16

tolerate conflicting evidence to the extent it is permitted by the probable cause standard." *Id*.

Where "a probable cause finding was made by a neutral magistrate in connection with a warrant application, a plaintiff must establish first, that the officer, with at least a reckless disregard for the truth, made false statements or omissions that create[d] a falsehood in applying for a warrant, and second, that those assertions or omissions were material, or necessary, to the finding of probable cause." *Geness*, 902 F.3d at 356–57 (internal quotations and citations omitted).  "[A]n assertion 'is made with reckless disregard when viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported.'" *Andrews v. Sciulli*, 853 F.3d 690, 698 (3d Cir. 2017) (quoting *Wilson*, 212 F.3d at 788).  "Omissions are made with reckless disregard where 'an officer withholds a fact in his ken that [a]ny reasonable person would have known . . . was the kind of thing the judge would wish to know.'" *Id.* (quoting *Wilson*, 212 F.3d at 788).

Here, the arrest warrant is not a part of the record.  What is in the record is the criminal complaint and the affidavit of probable cause in support of that criminal complaint.  It appears that the arrest warrant was issued based on the affidavit of probable cause attached to the criminal complaint.  In any event,

Conde-Shenery has not shown that defendant Rodick made false statements or omissions in the affidavit of probable cause that were material to the finding of probable cause.

Although Conde-Shenery asserts that Rodick made misrepresentations, he has not presented evidence to support the assertion that Rodick made misrepresentations in the affidavit of probable cause.  Conde-Shenery asserts that there are inaccuracies in the investigative notes of the police. *See doc. 46* at 13-18. But those notes are not the affidavit of probable cause, and there is no evidence that those notes were presented to the magisterial district judge.  Moreover, Conde-Shenery has not pointed to evidence to support his assertion regarding misstatements.

Conde-Shenery also asserts that the criminal complaint lists his incorrect address.[4]  Although the criminal complaint lists an address for Conde-Shenery in the box on the first page for a name and address, the affidavit of probable cause does not mention Conde-Shenery's address.  Thus, assuming that the first page of the criminal complaint has the wrong address, such an error is not material to whether there was probable cause for the charges against Conde-Shenery.

_____

[4]  Conde-Shenery points to a PennDOT record to support his assertion that his address was different from the address listed on the criminal complaint. *See doc. 46-1* at 12.  He also points to a criminal complaint against him from Carbon County regarding a different crime that lists the same address as the PennDOT record. *See doc. 62* at 13.

18

Pointing out that the affidavit of probable cause submitted by the defendants is not signed, Conde-Shenery intimates that this suggests that the affidavit was altered. *See doc. 46* at 20–22.  But it is not disputed that the charges were filed against Conde-Shenery, and Conde-Shenery has not presented evidence to support his assertion that the affidavit was altered.  Such an assertion is speculation, and "'an inference based upon a speculation or conjecture does not create a material factual dispute sufficient to defeat summary judgment.'" *Halsey*, 750 F.3d at 287 (quoting *Robertson v. Allied Signal, Inc.,* 914 F.2d 360, 382 n. 12 (3d Cir. 1990)).

Statements of a victim witness identifying the perpetrator "are typically sufficient to establish probable cause in the absence of '[i]ndependent exculpatory evidence or substantial evidence of [a] witness's own unreliability' that 'outweigh[s]' the probable cause that otherwise exists." *Dempsey*, 834 F.3d at 477–78 (quoting *Wilson*, 212 F.3d at 790).  "Applying this principle, [the Third Circuit has] held that no reasonable jury could find a lack of probable cause where a victim identified the arrestee in a photo array, but other evidence suggested the perpetrator was significantly taller than the arrestee, a different victim did not identify the arrestee, and another witness claimed to have seen the arrestee at the time of the crime, *Wilson*, 212 F.3d at 791-92, and where a victim first identified a different person as her assailant before changing her story to identify the arrestee, *Sharrar*, 128 F.3d at 818-19." *Id*.  "Thus, some 'unreliability or exculpatory

19

evidence' will not 'fatally undermine[ ]' probable cause otherwise established." *Id.* (quoting *Wilson*, 212 F.3d at 790).

Here, given Castillo's positive identification of Conde-Shenery as one of the two men who robbed him, the affidavit of probable cause attached to the criminal complaint shows that there was probable cause for the charges against Conde-Shenery. And Conde-Shenery has not pointed to evidence from which a reasonable trier of fact could find that Castillo was unreliable. Nor has he pointed to independent exculpatory evidence from which a reasonable trier of fact could find that there was not probable cause for the charges against Conde-Shenery.[5] Accordingly, defendant Rodick is entitled to summary judgment.

---

[5] Conde-Shenery submitted his own declaration. *See doc. 46-1* at 5–7. But that declaration addresses exclusively a purported incident between him and defendant Rodick that occurred before the robbery at issue in his case. *Id.* Conde-Shenery hopes to show through the declaration that Rodick had it out for him. That goes to Rodick's subjective state of mind. But, as set forth above, probable cause is an objective standard. *Halsey*, 750 F.3d at 299. Thus, an "officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause." *Devenpeck*, 543 U.S. at 153. Accordingly, Conde-Shenery's declaration is not relevant to whether there was probable cause for the charges against him. Conde-Shenery also suggests that the charges were in retaliation for his exercise of his First Amendment rights in 2012. *See doc. 46* at 12–13; *doc. 15* at ¶¶ 11–13. But a claim for retaliatory prosecution fails if, as here, there was probable cause for the charges. *See Hartman v. Moore,* 547 U.S. 250, 265-266 (2006) (holding that when a retaliation claim is based on a criminal prosecution, a plaintiff must plead and prove lack of probable cause).

### 2. Hazleton City.

As set forth above, a reasonable trier of fact could not conclude that there was not probable cause for the charges against Conde-Shenery.  Thus, Conde-Shenery's malicious prosecution claim fails.  And given that there was "no violation in the first place, there can be no derivative municipal claim." *Mulholland v. Gov't Cty. of Berks, Pa.*, 706 F.3d 227, 238 (3d Cir. 2013).  Thus, the City of Hazleton is also entitled to summary judgment.

Moreover, a municipality, such as the City of Hazleton, cannot be held liable for the unconstitutional acts of its employees on a theory of *respondeat superior*. *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978).  Rather, "under § 1983, local governments are responsible only for 'their *own* illegal acts.'" *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986) (emphasis in original)).  "[A] § 1983 claim against a municipality may proceed in two ways." *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019).  One way for a plaintiff to present a claim against a municipality is to establish "that an unconstitutional policy or custom of the municipality led to his or her injuries." *Id.*  Another way for a plaintiff to present a claim against a municipality is to establish that his or her injuries "were caused by a failure or inadequacy by the municipality that 'reflects a deliberate or conscious choice.'" *Id.* (quoting *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d

Cir. 2019)).  "The latter avenue arose in the failure-to-train context, but applies to other failures and inadequacies by municipalities, including those related to supervision and discipline of its police officers." *Id.*

Here, in addition to the fact that Conde-Shenery's claim against the City of Hazleton fails because there was probable cause for the charges against him, the City of Hazleton is entitled to summary judgment because Conde-Shenery has not presented evidence from which a reasonable trier of fact could conclude that a policy or custom of the city violated his rights or that a failure or inadequacy of training, supervision, or discipline by the city caused a violation of his rights.

## V.  Conde-Shenery's Motion for Summary Judgment.

As set forth above, Conde-Shenery filed his own motion for summary judgment.  Although he filed a statement of material facts in support of his motion, for most of his statements, he fails to include specific references to the parts of the record that support the statements.  He often cites to his brief in opposition to the defendants' motion for summary judgment. *See doc. 51* at ¶¶ 1–3, 5–9.  But statements in a brief are not evidence.

As to some statements, Conde-Shenery also cites generally to his exhibits. *See doc. 51* at ¶¶ 1–2, 6–9.  But it is a litigant's duty to point to specific parts of the record that support his or her contentions; it is not the Court's job to comb through the record looking for evidence to support the claims. *Cf. United States v. Dunkel,*

927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.").

Conde-Shenery also cites to his declaration. *See doc. 51* at ¶¶ 1, 4.  As noted above, however, the declaration relates to a prior incident involving Conde-Shenery and Rodick, and it is not relevant to whether there was probable cause for the robbery charges at issue in this case.  The other evidence that Conde-Shenery submitted is the same as the evidence submitted by the defendants.  And none of that evidence raises a genuine factual dispute about whether there was probable cause for the charges against Conde-Shenery.  Thus, Conde-Shenery's motion for summary judgment will be denied.

## VI.  Conclusion.

Based on the foregoing, we will grant the defendants' motion for summary judgment and deny Conde-Shenery's motion for summary judgment.  An appropriate order will be issued.

<u>*S/Susan E. Schwab*</u>
Susan E. Schwab
Chief United States Magistrate Judge